UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DAMION SMITH | * | CIVIL ACTION NO. 2:22-cv-04826 |
| | * | |
| Plaintiff | * | |
| | * | CHIEF JUDGE |
| VERSUS | * | NANNETTE JOLIVETTE BROWN |
| | * | |
| PALOMAR SPECIALTY INSURANCE | * | MAGISTRATE JUDGE |
| COMPANY | * | MICHAEL NORTH |
| | * | |
| Defendant | * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## ANSWER

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Palomar Specialty Insurance Company (hereinafter "Palomar"), who submits its answer to the Complaint of Plaintiff, Damion Smith (hereinafter "Plaintiff"), and respectfully responds as follows:

## FIRST DEFENSE

Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because the Complaint fails to state a claim, cause or right of action upon which relief may be granted against Palomar.

## SECOND DEFENSE

To the extent Plaintiff has already received payment from Palomar for his loss, Palomar avers that those payments were appropriate, that Plaintiff has already been paid everything owed under the insurance policy and in the event of a further judgment in favor of Plaintiff, Palomar claims a credit or a set-off for all amounts paid.

## THIRD DEFENSE

To the extent Palomar is legally entitled to any credit or set-offs for any amounts previously paid or made in the future to the Plaintiff herein, Palomar hereby claims those credits or set-offs

against any eventual award made to the Plaintiff, and to the extent Palomar has made any payments to which Plaintiff is not entitled, Palomar reserves its right to recover those amounts by cross-claim or counterclaim.

## **FOURTH DEFENSE**

At all times, Palomar adjusted Plaintiff's claim in good faith, in accordance with the terms and conditions of the applicable Palomar policy and in compliance with applicable statutory and jurisprudential law.

## **FIFTH DEFENSE**

Palomar avers that the damages claimed herein were caused by a non-covered event and/or peril that is excluded under the applicable policy of insurance, including but not limited to, the following exclusions:

### **SECTION I – EXCLUSIONS**

**A.**   We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

HO 00 03 10 00 (Page 11 of 22)

.   .   .

**2.**   **Earth Movement and Settlement, meaning:**

**a.**   Earthquake including land shock waves or tremors before, during or after a volcanic eruption;

**b.**   Landslide;

**c.**   Mine subsidence;

**d.**   Mudflow;

**e.**   Earth sinking, rising or shifting;

**f.**   Clay shrinkage or other expansion or contraction of soils or organic materials;

**g.**   Decay of buried or organic materials, construction debris or fill;

**h.**   Settling, cracking or expansion of foundation; or

**i.**   Soil movement resulting form blasting; or

**j.**   Sinkhole loss;

caused by or resulting from human or animal forces or any act of nature unless direct loss by fire or explosion ensues and then we will pay only for the ensuing loss.

This Exclusion **A.2.** does not apply to loss by theft.

**3.**     **Water Damage**

Water Damage means:

**a.**     Flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.**     Water, water-borne material, sewage or any other substance which backs up through sewers or drains;

**c.**     Water, water-borne material, sewage or any other substance that overflows from a sump pump, sump pump well or other system designed for the removal of subsurface water which is drained from a foundation area of a structure; or

**d.**     Water, water-borne material, sewage or any other substance on or below the surface of the ground, regardless of its source. This includes water or any other substance which experts pressure on or flows, seeps or leaks through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure;

caused by or resulting from human or animal forces or any act of nature.

This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason of water or waterborne material from a dam, levee, seawall or any other boundary or containment system.

Direct loss by fire, explosion or theft resulting from water damage is covered.

CCH H03 LA SP 03 19 (Page 4 of 11)

**4.**     **Power Failure**

Power Failure means the failure of power or other utility service if the failure takes place off the "residence premises". But if the failure results in a loss, from a Peril Insured Against on the "residence premises", we will pay for the loss caused by that peril.

HO 00 03 10 00 (Page 12 of 22)

.     .     .

**11.**     **Existing Damage**

**a.**     Damages which occurred prior to policy inception regardless of whether such damages were apparent at the time of the inception of this policy or discovered at a later date; or

**b.**     Claims or damages arising out of workmanship, repairs or lack of repairs arising from damage which occurred prior to policy inception.

This exclusion does not apply in the event of a total loss caused by a Peril Insured Against.

**12.    Windstorm or Hail**
    **a.**    Outdoor radio equipment, television antennas, satellite dishes, aerials including their lead wiring, masts and towers;
    **b.**    Awnings, aluminum framed screened enclosures, aluminum framed carports, and aluminum sheds; and
    **c.**    Solar panels; solar water heating systems including solar panels, pipes supplying and returning water to solar panels, and equipment or devices controlling solar water heating systems.

**13.    Diminished Value**
We do not cover any loss due to diminished value of any property covered under this policy.

**14.**    Pressure from or presence of tree, shrub, or plant roots unless such pressure or presence is caused by a covered peril.

CCH H03 LA SP 03 19 (Page 5 of 11)

.    .    .

**B.**    We do not insure for loss to property described in Coverages **A** and **B** caused by any of the following. However, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.
    **1.**    Weather conditions. However, this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in **A.** above to produce the loss.
    **2.**    Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
    **3.**    Faulty, inadequate or defective:
        **a.**    Planning, zoning, development, surveying, siting;
        **b**. Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
        **c.**    Materials used in repair, construction, renovation or remodeling; or
        **d.**    Maintenance;
    of part or all of any property whether on or off the "residence premises".

HO 00 03 10 00 (Page 12 of 22)

## SIXTH DEFENSE

Plaintiff's claims against Palomar are barred or reduced to the extent Plaintiff failed to

exercise ordinary care and caution to protect the damage to his property:

## SECTION I – EXCLUSIONS

**A.**     We do not insure for loss caused directly or indirectly by any of the
following.  Such loss is excluded regardless of any other cause or event
contributing concurrently or in any sequence to the loss.  These exclusions
apply whether or not the loss event results in widespread damage or affects
a substantial area.

.     .     .

**5.     Neglect**

Neglect means neglect of an "insured" to use all reasonable means
to save and preserve property at and after the time of a loss.

HO 00 03 10 00 (Pages 11-12 of 22)

## SEVENTH DEFENSE

In the further alternative, Plaintiff's claims are barred to the extent they are covered by

other insurance:

**F.     Other Insurance And Service Agreement**

If a loss covered by this policy is also covered by:

**1.**     Other insurance, we will pay only the proportion of the loss that the
limit of liability that applies under this policy bears to the total
amount of insurance covering the loss; or

**2.**     A service agreement, this insurance is excess over any amounts
payable under any such agreement. Service agreement means a
service plan, property restoration plan, home warranty or other
similar service warranty agreement, even if it is characterized as
insurance.

HO 00 03 10 00 (Page 14 of 22)

## EIGHTH DEFENSE

In the alternative, Palomar alleges and avers that Plaintiff was underinsured and the co-

insurance penalty applies.

## NINTH DEFENSE

To the extent Plaintiff's Complaint claims he is entitled to recovery under the insurance policy in accordance with LSA-R.S. 22:1318, Louisiana's Valued Policy Law, Palomar denies the Valued Policy Law applies to this claim. Palomar further avers that Plaintiff has not suffered a total loss. Palomar further avers that an award to Plaintiff under Louisiana's Valued Policy Law would impair the obligations of contracts, would result in a taking without just compensation, would interfere with interstate commerce, would constitute a deprivation of property without due process, and would deprive Palomar of equal protection of the laws, all in contravention of the Constitutions of the United States of America and the State of Louisiana.

## TENTH DEFENSE

Plaintiff's claims are barred in whole or in part to the extent he failed to satisfy all of his obligations pursuant to the following policy provisions:

**B**.   **Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

**1.**   Give prompt notice to us or our agent;

**2.**   Notify the police in case of loss by theft. You must:

**a.**   File a police report describing all items stolen;

**b.**   Submit the filed report to us; and

**c.**   Cooperate with the police in their investigation.

**3.**   Notify the credit card or electronic fund transfer card or access device company in case of loss as provided for in **E.6**. Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages;

**4.**   Protect the property from further damage. If repairs to the property are required, you must:

**a.**   Make reasonable and necessary repairs to protect the property; and

**b.**   Keep an accurate record of repair expenses;

**5.**   Cooperate with us in the investigation of a claim;

**6.**   Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all

bills, receipts and related documents that justify the figures in the inventory;

**7.** As often as we reasonably require:

    **a**.    Show the damaged property;

    **b**.    Provide us with records and documents we request and permit us to make copies; and

    **c**.    You, any "insured" and any one you hire in connection with your claim, must:

        **(1)**    Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

        **(2)**    Sign the same; and

    **d**.    If you are an association, corporation or other entity; any members, officers, directors, partners or similar representatives of the association, corporation or other entity and anyone you hire in connection with your claim; must:

        **(1)**    Submit to examinations under oath and recorded statements, while not in the presence of any other "insured"; and

        **(2)**    Sign the same.

    **e**.    Representations made by any of the preceding persons who appear in the examinations under oath and/or recorded statements will be deemed to be your representations.

**8.** Send to us your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

    **a**.    The time and cause of loss;

    **b**.    The interests of all "insureds" and all others in the property involved and all liens on the property;

    **c**.    Other insurance which may cover the loss;

    **d**.    Changes in title or occupancy of the property during the term of the Policy;

    **e**.    Specifications of damaged buildings and detailed repair estimates;

    **f**.    The inventory of damaged personal property described in **6**. Above;

    **g**.    Receipts for additional living expenses incurred and records that support the fair rental value loss; and

    **h**.    Evidence or affidavit that supports a claim under **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages, stating the amount and cause of loss.

    This proof of loss must be sent to us within:

        **(1)**    180 days after our request, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials; however, this 180- day period does not

commence until the state of emergency or disaster has ended and you have access to your property; or

**(2)**    60 days after our request in all other cases.

9.    At our request, provide to us or execute an authorization which allows us to obtain on your behalf, records and documentation we deem relevant to the investigation of your loss.

HO 00 03 10 00 (Page 13 of 22) as amended by CCH HO3 LA SP 03 19 (Pages 5-6 of 11)

.  .  .

**G.**    **Suit Against Us**

No action can be brought against us unless:

**1.**    There has been full compliance with all of the terms under Section **I** of this policy; and

**2.**    The action is brought within the time limitations prescribed under Louisiana law.

CCH HO3 LA SP 03 19 (Page 6 of 11)

## ELEVENTH DEFENSE

In the event it is discovered that Plaintiff made any material misrepresentations in connection with his claim for recovery for damages under the policy or in the policy application, Palomar pleads such representations are in violation of the terms and conditions of said policy, thereby voiding coverage and any obligations therein, pursuant to the terms and conditions of said policy, which are plead as if copied herein *in extenso*.

**Q.**    **Concealment Or Fraud**

.  .  .

**2.**    With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy, we provide no coverage for loss if, whether before or after a loss, one or more "insureds" have:

**a.**    Intentionally concealed or misrepresented any material fact or circumstance;

**b.**    Engaged in fraudulent conduct; or

**c.**    Made false statements;

relating to this insurance.

**3.**     However, if the conduct specified above is in relation to the procurement of the contract or occurs subsequent to the issuance of the contract, but if known to us would have caused us not to issue the Policy, coverage will only be denied if the conduct was committed with the intent to deceive.

CCH HO3 LA SP 03 19 (Page 7 of 11)

## TWELFTH DEFENSE

The Palomar Policy imposes affirmative duties upon Plaintiff that include Plaintiff's submission to the appraisal process in the event the parties disagree on the amount of the loss:

**E.     Appraisal**

If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. Any outcome of the appraisal will not be binding on either party.

Each party will:
**1.**     Pay its own appraiser; and
**2.**     Bear the other expenses of the appraisal and umpire equally.

CCH HO3 LA SP 03 19 (Page 6 of 11)

## THIRTEENTH DEFENSE

La. R.S. 22:1311 contains the Standard Fire Policy, which is attached to every policy of fire insurance in Louisiana. The Standard Fire Policy provides as follows regarding appraisal:

**Appraisal** - In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand.  The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then on request of the insured or this Company such umpire shall be

selected by a judge of a court of record in the state in which the property covered is located.  The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item, and failing to agree, shall submit their differences, only, to the umpire.  An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss.  Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally.

La. R.S. § 22:1311

## **FOURTEENTH DEFENSE**

In addition, LSA-R.S. 1892(G) contains an appraisal provision, which states as follows:

Appraisal. If you and this Company fail to agree as to the amount of loss, either party may demand that the amount of the loss be set by appraisal. If either party makes a written demand for appraisal, each party shall select a competent appraiser and notify the other party of their appraiser's identity within twenty days of receipt of the written demand for appraisal. The appraisers shall select a competent and impartial umpire; but, if after fifteen days the appraisers have not agreed upon who will serve as umpire, the umpire shall be appointed by a judge of the court of record in which the property is located. The appraisers shall then appraise the loss. If the appraisers submit written notice of an agreement as to the amount of the loss to this Company, the amount agreed upon shall set the amount of the loss. If the appraisers fail to agree within thirty days, the appraisers shall submit their differences along with any supporting documentation to the umpire, who shall appraise the loss. The appraisers may extend the time to sixty days for which they must agree upon the amount of loss or submit their differences and supporting documents to the umpire, if the extension is agreed to by the appraisers from both parties. A written agreement signed by the umpire and either party's appraiser shall set the amount of the loss, pursuant to the appraisal process, but shall not preclude either party from exercising its rights under the policy or the law. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the expenses of the umpire shall be divided and paid in equal shares by you and this Company. If there is an appraisal award, all applicable policy terms, limits, deductibles, and conditions will still apply. If you file a lawsuit relative to this policy against this Company prior to a demand for appraisal, the lawsuit will be held in abatement until the execution of an appraisal award.

La. R.S. 1892(G)

## FIFTEENTH DEFENSE

Palomar avers that it has not been provided with satisfactory proof of loss as is required by the jurisprudential law, statutory authority and the terms, conditions, provisions, and exclusions of the subject policy.

## SIXTEENTH DEFENSE

To the extent Plaintiff has received money from any state and/or federal agency or program, and that Plaintiff has assigned and/or subrogated his rights to said state or federal agency or program, Palomar avers that Plaintiff is not the proper party to prosecute this action and said federal or state agency or program are the proper party Plaintiff to bring this action.

## SEVENTEENTH DEFENSE

Plaintiff has no right or cause of action to the extent of the interests of the mortgagee holding the mortgage on the property.

## EIGHTEENTH DEFENSE

The liability of Palomar in this matter, if any, is dependent solely upon a policy of insurance, which, as a written document, is the best evidence of its terms, conditions, provisions, and exclusions and Palomar pleads such terms, conditions, provisions, and exclusions as if copied herein *in extenso*:

## SECTION I – PERILS INSURED AGAINST

**A.** **Coverage A – Dwelling and Coverage B – Other Structures**
   **1.** We insure for sudden and accidental direct physical loss to property described in Coverages **A** and **B.**
   **2.** We do not insure, however, for loss:
      **a.** Excluded under Section **I** – Exclusions;
      **b**. Involving collapse except as provided in **E.8.** Collapse under Section **I** – Property Coverages; or
      **c.** Caused by:

**(1)** Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This provision does not apply if you have used reasonable care to:

**(a)** Maintain heat in the building; or

**(b)** Shut off the water supply and drain all systems and appliances of water.

However, if the building is protected by an automatic fire protective sprinkler system, you must use reasonable care to continue the water supply and maintain heat in the building for coverage to apply.

For purposes of this provision a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment;

**(2)** Freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a:

**(a)** Fence, pavement, patio or swimming pool;

**(b)** Footing, foundation, bulkhead, wall, or any other structure or device that supports all or part of a building, or other structure;

**(c)** Retaining wall or bulkhead that does not support all or part of a building or other structure; or

**(d)** Pier, wharf or dock;

**(3)** In or to a "residence premises" under remodel, renovation, demolition, or construction, or of materials and supplies for use in the remodel, renovation, demolition, or construction until the "residence premises" is finished and occupied;

**(4)** Vandalism and malicious mischief, and any ensuing loss caused by any intentional and wrongful act committed in the course of the vandalism or malicious mischief, if the dwelling has been "vacant" or "unoccupied" for more than 60 consecutive days immediately before the loss. A dwelling being constructed is not considered "vacant" or "unoccupied";

**(5)** Seepage or leakage of water or steam or the presence or condensation of humidity, moisture, or vapor over a period of 14 or more days, unless such seepage or leakage of water or steam or the presence or condensation of humidity, moisture, or vapor and the resulting damage is unknown to all "insureds" and is

"hidden" within the walls or ceilings or beneath the floors or above the ceiling of a structure.

In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instance the seepage or leakage of water or steam or the presence or condensation of humidity, moisture, or vapor began; or

**(6)** Any of the following:

**(a)** Wear and tear, marring, deterioration;

**(b)** Mechanical breakdown, latent defect, inherent vice or any quality in property that causes it to damage or destroy itself;

**(c)** Smog, rust or other corrosion, or dry rot;

**(d)** Smoke from agricultural smudging or industrial operations;

**(e)** Discharge, dispersal, seepage, migration, release or escape of pollutants unless the discharge, dispersal, seepage, migration, release or escape is itself caused by a Peril Insured Against named under Coverage **C.**

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

**(f)** Settling, shrinking, bulging or expansion, including resultant cracking, of bulkheads, pavements, patios, footings, foundations, walls, floors, roofs or ceilings;

**(g)** Birds, vermin, rodents, racoons, opossums, bats, or insects;

**(h)** Animals owned or kept by an "insured".

**(i)** Nesting or infestation, or discharge of waste products or secretions, by any animals.

**Exception To c.(6)**

Unless the loss is otherwise excluded, we cover loss to property covered under Coverage **A** or **B** resulting from an accidental discharge or overflow of water or steam from within a:

**(ii)** Plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance on the "residence premises". This includes the cost to tear out and replace any part of a building, or other structure, on the "residence premises", but only when necessary to repair the system or appliance. However, such tear out and replacement coverage only applies to other structures if the water or steam

causes actual damage to a building on the "residence premises".

We do not cover loss to the system or appliance from which this water or steam escaped.

For purposes of this provision, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

Section **I** – Exclusion **A.3**. Water, Paragraphs **a**. and **c**. that apply to surface water and water below the surface of the ground do not apply to loss by water covered under **c.(5)** and **(6)** above.

Under **2.b**. and **c**. above, any ensuing loss to property described in Coverages **A** and **B** not precluded by any other provision in this policy is covered.

**B.     Coverage C – Personal Property**
We insure for sudden and accidental direct physical loss to the property described in Coverage **C** caused by any of the following perils unless the loss is excluded under Section **I** – Exclusions.
**1.     Fire Or Lightning**
**2.     Windstorm Or Hail**
        This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

        This peril does not include loss to the property contained in a building caused by rain, snow, sleet, sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

                                .    .    .

**12.     Accidental Discharge Or Overflow Of Water Or Steam**

        **a.**     This peril means accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.
        **b.**     This peril does not include loss:
                **(1)**     To the system or appliance from which the water or steam escaped;
                **(2)**     Caused by or resulting from freezing except as provided in Peril Insured Against **14.** Freezing;

**(3)** On the "residence premises" caused by accidental discharge or overflow which occurs off the "residence premises"; or

**(4)** Seepage or leakage of water or steam or the presence or condensation of humidity, moisture, or vapor over a period of 14 or more days, unless such seepage or leakage of water or steam or the presence or condensation of humidity, moisture, or vapor and the resulting damage is unknown to all "insureds" and is "hidden" within the walls or ceilings or beneath the floors or above the ceiling of a structure. In the event this exclusion applies, we will not pay for any damages sustained starting from the first day and instance the seepage or leakage of water or steam or the presence or condensation of humidity, moisture, or vapor began; or

**c.** In this peril, a plumbing system or household appliance does not include a sump, sump pump or related equipment or a roof drain, gutter, downspout or similar fixtures or equipment.

**d.** Section **I** – Exclusion **A.3.** Water, Paragraphs **a**. and **c.** that apply to surface water and water below the surface of the ground do not apply to loss by water covered under this peril.

### 13. Sudden And Accidental Tearing Apart, Cracking, Burning Or Bulging

This peril means sudden and accidental tearing apart, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

We do not cover loss caused by or resulting from freezing under this peril.

.   .   .

### 15. Sudden And Accidental Damage From Artificially Generated Electrical Current

This peril does not include loss to tubes, transistors, electronic components or circuitry that is a part of appliances, fixtures, computers, home entertainment units or other types of electronic apparatus.

HO 00 03 10 00 (Pages 8-11 of 22) as amended by CCH HO3 LA SP 03 19 (Pages 3-4 of 11)

## NINETEENTH DEFENSE

Plaintiff's claims must be calculated according to the Policy's Loss Settlement Provision.

**C.     Loss Settlement**

In this Condition C., the terms "cost to repair or replace" and "replacement cost" do not include the increased costs incurred to comply with the enforcement of any ordinance or law, except to the extent that coverage for these increased costs is provided in **E.11**. Ordinance Or Law under Section **I** – Property Coverages. Covered property losses are settled as follows:

**1.**     Property of the following types:
  **a**.     Personal property;
  **b.**     Awnings, carpeting, household appliances, outdoor antennas and outdoor equipment, whether or not attached to buildings;
  **c.**     Structures that are not buildings; and
  **d.**     Grave markers, including mausoleums;
  at actual cash value at the time of loss but not more than the amount required to repair or replace.

**2.**     Buildings covered under Coverage **A** or **B** at replacement cost without deduction for depreciation, subject to the following:

  **a.**     If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace, after application of any deductible and without deduction for depreciation, but not more than the least of the following amounts:
    **(1)**     The limit of liability shown on the Declarations page, plus an additional 25% with respect to buildings.
    **(2)**     The amount actually and necessarily spent to repair or replace the damaged building.
    This coverage is intended to protect you from unforeseen increases in construction costs due to economic factors. We will not increase the stated limit to cover loss caused by ordinances or laws that regulate the construction, repair, or demolition of this property.

  **b.**     If, at the time of loss, the amount of insurance in this policy on the damaged building is less than 80% of the full replacement cost of the building immediately before the loss, we will pay the greater of the following amounts, but not more than the limit of liability under this policy that applies to the building:
    **(1)**     The actual cash value of that part of the building damaged; or
    **(2)**     That proportion of the cost to repair or replace, after application of any deductible and without deduction

for depreciation, that part of the building damaged, which the total amount of insurance in this policy on the damaged building bears to 80% of the replacement cost of the building.

**c.** To determine the amount of insurance required to equal 80% of the full replacement cost of the building immediately before the loss, do not include the value of:

**(1)** Excavations, footings, foundations, piers, or any other structures or devices that support all or part of the building, which are below the undersurface of the lowest basement floor;

**(2)** Those supports described in **(1)** above which are below the surface of the ground inside the foundation walls, if there is no basement; and

**(3)** Underground flues, pipes, wiring and drains.

**d.** We will pay no more than the actual cash value of the damage until actual repair or replacement is complete. Once actual repair or replacement is complete, we will settle the loss as noted in **2.a.** and b. above.

However, if the cost to repair or replace the damage is both:

**(1)** Less than 5% of the amount of insurance in this policy on the building; and

**(2)** Less than $2,500;

we will settle the loss as noted in **2.a.** and **b.** above whether or not actual repair or replacement is complete.

**e.** You may disregard the replacement cost loss settlement provisions and make claim under this Policy for loss to buildings on an actual cash value basis. You may then make claim for any additional liability according to the provisions of this Condition **D**. Loss Settlement, provided you notify us, within 180 days after the date of loss, of your intent to repair or replace the damaged building. However, if the loss results from a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, this 180-day period does not commence until the state of emergency or disaster has ended and you have access to your property.

HO 00 03 10 00 (Pages 13-14 of 22) as amended by CCH H03 LA SP 03 19 (Page 6 of 11) and CCH 13 LA IRC 07 19 (Page 1 of 1).

### INCREASED REPLACEMENT COST COVERAGE

For an additional premium, and if you have notified us within 90 days of the start of any alterations to the insured building(s) which increase the replacement cost of the building(s) by $10,000 or more, or if there have been no such alterations, your policy is changed as follows:

If the cost to replace the building is more than the limit of liability indicated on the Declarations Page, we will provide an additional 25% of the stated limit of liability for Coverage. For purposes of any other coverages not addressed in this endorsement, this additional 25% does not change the Coverage limit of liability stated on the Declarations Page.

CCH 13 LA IRC 07 19 (Page 1 of 1).

## **TWENTIETH DEFENSE**

Plaintiff is limited to a maximum of 10% of the limit of liability for Coverage A for increased costs for the enforcement of any ordinance or law, as follows:

**11.  Ordinance Or Law**

**a.**  You may use up to 10% of the limit of liability that applies to Coverage **A** for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)**  The construction, demolition, remodeling, renovation or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)**  The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)**  The remodeling, removal or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.**  You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair or replacement of property as stated in **a.** above.

**c.**  We do not cover:

**(1)**  The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)**  The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the

          effects of, pollutants in or on any covered building or other structure.

          Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

    This coverage is additional insurance.

HO 00 03 10 00 (Pages 8 of 22)

**ORDINANCE OR LAW COVERAGE- 10%**

For an additional premium, we will provide coverage for costs associated with the enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or structure insured under this policy subject to the limit and conditions described below.

**CONDITIONS**

- Coverage provided by this endorsement only applies when damage by a Peril Insured Against has occurred to your Dwelling or Other Structures.

- The coverage provided by this endorsement applies to additional costs incurred due solely to the enforcement of any ordinance or law that requires or regulates the construction, repair, or demolition, including the costs of removing debris, directly attributable to ordinances or laws regulating such. Coverage will not be available to cover increases in costs attributable to other factors.

- The ordinances or law must have been in effect at the time the covered loss occurs.

**LIMIT OF LIABILITY**

Our limit of liability for coverage provided by this endorsement is 10% of the Coverage **A** limit shown on you Declarations page. Coverage for endorsement of ordinances or laws provided by this endorsement is in addition to the Coverage **A** limit shown on your Declarations page.

All other provisions of your policy apply.

CCH 16 OL10 06 16 (Page 1 of 1)

<u>**TWENTY-FIRST DEFENSE**</u>

In the further alternative, Palomar asserts there is no insurance coverage for the claims of Plaintiff based upon, but not limited to the following:

**D.**       **COVERAGE D – LOSS OF USE**

The limit of liability for Coverage **D** is the total limit for the coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1.      Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living. We will pay:

**a.**      80% of the additional living expenses you incur due to a windstorm or hail loss; or

**b.**      100% of the additional living expenses you incur due to a covered loss other than windstorm or hail;

But no more than the limit of liability shown for Coverage **D** on the Declarations.

Payment will be for the shortest time required to repair or replace such premises.

**2.      Fair Rental Value**

If a loss covered under Section **I** makes that part of the "residence premises: rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

**3.      Civil Authority Prohibits Use**

If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against, we cover the loss as provided in **1.** Additional Living Expense and **2.** Fair Rental Value above for no more than two weeks.

**4.      Loss Or Expense Not Covered**

We do not cover loss or expense due to cancellation of a lease or agreement.

The periods of time under **1.** Additional Living Expense, **2.** Fair Rental Value and **3**. Civil Authority Prohibits Use above are not limited by expiration of this policy.

HO 00 03 10 (Page 5 of 22) As amended by CCH HO3 LA SP 03 19 (Page 3 of 11)

## <u>**TWENTY-SECOND DEFENSE**</u>

To the extent it is later determined that any insured's intentional act caused or contributed to the loss, then there is no coverage for Plaintiff's claims.

### SECTION I – EXCLUSIONS

**8.      Intentional Loss**

Intentional Loss means any loss arising out of any act committed:

    **a.**    With respect to loss caused by fire:
        **(1)**    By or at the direction of the "insured"; and
        **(2)**    With the intent to cause a loss.
    **b.**    With respect to loss caused by a peril other than fire and with respect to all "insureds" covered under this Policy:
        **(1)**    By you or at your direction; and
        **(2)**    With the intent to cause a loss.
However, if you commit to an act with the intent to cause a loss, we will provide coverage to an innocent "insured" victim of domestic abuse, as defined in the "Domestic Abuse Insurance Protection Act", to the extent of that person's interest in the property when the damage is proximately related to and in furtherance of domestic abuse.

CCH HO3 LA SP 03 19 (Page 5 of 11).

## <u>TWENTY-THIRD DEFENSE</u>

Plaintiff's claims are limited by the Limited Fungi, Mold, Wet Or Dry Rot Or Bacteria Coverage endorsement contained in Form CCH LA MLD 03 19, the terms, conditions, provisions and exclusions of which are pled as if copied herein *in extenso:*

**LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA
COVERAGE – LOUISIANA
SCHEDULE**

| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | | |
|---|---|---|
| 1. | **Section I – Property Coverage Limit Of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or "Bacteria"** | $ 5,000 |
| 2. | **Section II – Coverage E Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria"** | $0 |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

## DEFINITIONS

The following definitions are added:
    **"Fungi"**

    **a.**     "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **b.**     Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**"Bacteria"**

"Bacteria" means any type, kind or form of bacterium.

## SECTION I – PROPERTY COVERAGES

**E.**    **Additional Coverages**

Paragraph **10.k.(2)(d)** is deleted in Form **HO 00 05** only.

The following Additional Coverage is added:

**13.**    **"Fungi", Wet or Dry Rot, Or "Bacteria"**

    **a.**     The amount shown in the Schedule above is the most we will pay for:

        **(1)**     The total of all loss payable under Section **I** – Property Coverages caused by "fungi", wet or dry rot, or "bacteria";

        **(2)**     The cost to remove "fungi", wet or dry rot, or "bacteria" from property covered under Section **I** – Property Coverages;

        **(3)**     The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or "bacteria"; and

        **(4)**     The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or "bacteria" whether performed prior to, during or after removal, repair, restoration or replacement. The cost of testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or "bacteria".

    **b.**     The coverage described in **13.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    **c.**     The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

        **(1)**     Number of locations insured under this endorsement; or

        **(2)**     Number of claims made.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I – PERILS INSURED AGAINST

In Form **HO 00 03:**

**A.** **Coverage A – Dwelling And Coverage B - Other Structures**

Paragraph **2.c.(5)** is replaced by the following:

**(5)** Caused by constant or repeated seepage or leakage of water or the presence of and/or or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.c.(6)(c)** is replaced by the following:

**(c)** Smog, rust or other corrosion;

**B.** **Coverage C – Personal Property**

**12.** **Accidental Discharge Or Overflow Of Water Or Steam**

Paragraph **b.(4)** is replaced by the following:

**(4)** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

In Form **HO 00 05:**

**A.** Under Coverages **A, B** and **C:**

Paragraph **2.d.** is replaced by the following:

**d.** Caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

Paragraph **2.e.(3)** is replaced by the following:

**(3)** Smog, rust or other corrosion;

## SECTION I – EXCLUSIONS

Exclusion **A.10.** is added:

**10.**    **"Fungi'", Wet Or Dry Rot, Or "Bacteria"**

"Fungi", Wet Or Dry Rot, Or "Bacteria" meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or "bacteria".

This exclusion does not apply:

**a.**    When "fungi", wet or dry rot, or "bacteria" results from fire or lightning;

**b.**    To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or "Bacteria" Additional Coverage under Section **I** –Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning; or

**c.**    With respect to "fungi", wet or dry rot, or "bacteria" that is located on the portion of the covered property that must be repaired or replaced because of direct physical damage caused by a Peril Insured Against.

However, the exclusion shall continue to apply to:

**(1)**    The cost to treat, contain, remove or dispose of "fungi", wet or dry rot, or "bacteria" beyond that which is required to repair or replace the covered property physically damaged by a Peril Insured Against;

**(2)**    The cost of any testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or "bacteria" whether performed prior to, during or after removal, repair, restoration or replacement; and

**(3)**    Any increase in loss under Coverage **D**– Loss Of Use and Additional Coverage **1.** Debris Removal resulting from **c.(1)** and **(2)**.

Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or "bacteria" is covered.

## SECTION I – CONDITIONS

Condition **P. Policy Period** is replaced by the following:

**P.    Policy Period**

This policy applies to loss or costs which occur during the policy period.

## SECTION II – CONDITIONS

Condition **A. Limit Of Liability** is replaced by the following:

**A.    Limit Of Liability**

Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** Limit Of Liability

shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** Limit Of Liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or "bacteria" will not be more than the Section **II** –Coverage **E** Aggregate Sublimit Of Liability for "Fungi", Wet Or Dry Rot, Or "Bacteria". That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

**1.** Number of locations insured under the policy to which this endorsement is attached;

**2.** Number of persons injured;

**3.** Number of persons whose property is damaged;

**4.** Number of "insureds"; or

**5.** Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or "bacteria" described in Condition **A.** Limit Of Liability of this endorsement, Condition **B**. **Severability Of Insurance** is replaced by the following:

**B.** **Severability Of Insurance**

This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** – Conditions, **A**. Limit Of Liability. This condition will not increase the limit of liability for this coverage.

All other provisions of the policy apply.

CCH LA MLD 03 19 (Page 1-3 of 3)

## <u>TWENTY-FOURTH DEFENSE</u>

Plaintiff's personal property claims are subject to the Personal Property Replacement Cost

Loss Settlement endorsement as follows:

**PERSONAL PROPERTY REPLACEMENT COST LOSS SETTLEMENT**

A. **Eligible Property**

    1.    Covered losses to the following property are settled at replacement cost at the time of the loss:

        **a.**    Coverage **C**; and

        **b.**    If covered in this policy:

            **(1)**    Awnings, outdoor antennas and outdoor equipment; and

            **(2)**    Carpeting and household appliances;

whether or not attached to buildings.

    2.    This method of loss settlement will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy and not subject to agreed value loss settlement:

        **a.**    Jewelry;

        **b.**    Furs and garments:

            **(1)**    Trimmed with fur; or

            **(2)**    Consisting principally of fur;

        **c.**    Cameras, projection machines, films and related articles of equipment;

        **d.**    Musical equipment and related articles of equipment;

        **e.**    Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding:

            **(1)**    Pens or pencils;

            **(2)**    Flasks;

            **(3)**    Smoking implements; or

            **(4)**    Jewelry; and

        **f.**    Golfer's equipment meaning golf clubs, golf clothing and golf equipment.

Personal Property Replacement Cost loss settlement will not apply to other classes of property separately described and specifically insured.

B. **Ineligible Property**

Property listed below is not eligible for replacement cost loss settlement. Any loss will be settled at actual cash value at the  time of loss but not more than the amount required to repair or replace.

    1.    Antiques, fine arts, paintings and similar articles of rarity or antiquity which cannot be replaced.

    2.    Memorabilia, souvenirs, collector's items and similar articles whose age or history contribute to their value.

    3.    Articles not maintained in good or workable condition.

    4.    Articles that are outdated or obsolete and are stored or not being used.

**C.**   **Replacement Cost Loss Settlement Condition**
The following loss settlement condition applies to all property described in **A.** above:

**1.**   We will pay no more than the least of the following amounts:

**a.**   Replacement cost at the time of loss without deduction for depreciation;

**b.**   The full cost of repair at the time of loss;

**c.**   The limit of liability that applies to Coverage **C**, if applicable;

**d.**   Any applicable special limits of liability stated in this policy; or

**e.**   For loss to any item described in **A.2.a. – f.** above, the limit of liability that applies to the item.

**2.**   If the cost to repair or replace the property described in **A.** above is more than $500, we will pay no more than the actual cash value for the loss until the actual repair or replacement is complete.

**3.**   You may make a claim for loss on an actual cash value basis and then make claim for any additional liability in accordance with this endorsement provided you notify us of your intent to do so within 180 days after the date of loss.

All other provisions of this policy apply.

HO 04 90 10 00 (Page 1 of 1)

## TWENTY-FIFTH DEFENSE

Plaintiff's claims are subject to the Hurricane Deductible endorsement as follows:

## HURRICANE DEDUCTIBLE - LOUISIANA

| **Hurricane Deductible:** |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A.**   **Definitions**
The following definition is added for the deductible provided by this endorsement:
"Hurricane" means a storm system that has been declared a hurricane by the National Hurricane Center of the National Weather Service.

**B.**   **Section I – Conditions**
The following special deductible provisions are added to the policy:

**1.**   **Applicable Hurricane Deductible**

**a.**   The applicable hurricane deductible:

**(1)**   Is either:

**(a)**   The dollar amount shown in the Schedule as the Hurricane Deductible; or

      **(b)**    If a percentage is shown in the Schedule, the dollar amount determined by multiplying the Coverage **A** Limit of Liability shown in the Declarations by the percentage shown as the Hurricane Deductible in the Schedule.

  **(2)**    Shall apply during the period:

      **(a)**    Beginning at the time a hurricane watch or hurricane warning is issued for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service;

      **(b)**    Continuing for the time period which the hurricane conditions exist anywhere in the state; and

      **(c)**    Ending 24 hours following the termination of the hurricane watch or hurricane warning for any part of the state of Louisiana by the National Hurricane Center of the National Weather Service.

**2.**    **Standard Hurricane Deductible**

  **a.**    With respect to the peril of Windstorm or Hail, for any one loss, we will pay only that part of the total of all loss payable that exceeds the applicable hurricane deductible described in Paragraph **B.1.** of this endorsement.

  **b.**    Except as provided in Paragraph **B.3**. of this endorsement, no other deductible applies to loss caused by the peril of Windstorm or Hail during the period described in Paragraph **B.1.a(2)** of this endorsement.

  **c.**    Refer to the policy Declarations for the deductible that applies to loss caused by the peril of Windstorm or Hail other than during the period described in Paragraph **B.1.a(2)** of this endorsement.

**3.**    **Calendar Year Hurricane Deductible**

The following provisions apply only if the "residence premises" is a one- or two-family owner-occupied dwelling:

  **a.**    Subject to Paragraph **B.3.b** of this endorsement, the applicable hurricane deductible described in Paragraph **B.1.** of this endorsement is a calendar year deductible and applies to all covered windstorm or hail losses resulting from one or more "hurricanes" during the same calendar year.

  **b.**    With respect to a covered windstorm or hail loss:

    **(1)**    Resulting from the first "hurricane" during a calendar year, we will pay only that part of the total of all loss payable that exceeds the applicable

hurricane deductible described in Paragraph **B.1.** of this endorsement.

**(2)** Resulting from the second, and each subsequent, "hurricane" during the same calendar year, we will pay only that part of the total of all loss payable that exceeds the greater of:

**(a)** The remaining dollar amount of the applicable hurricane deductible described in Paragraph **B.1.** of this endorsement for that calendar year; or

**(b)** The deductible that applies to all perils other than Windstorm or Hail.

**c.** You must maintain receipts or other records of all covered windstorm or hail losses, resulting from any "hurricane", that are less than the applicable hurricane deductible, and provide us with such receipts or other records as often as we reasonably require, so that we may consider the amount of such losses when adjusting claims resulting from any subsequent "hurricane" during the same calendar year.

**d.** Paragraph **B.2.** of this endorsement does not apply.

**e.** No other deductible applies to loss caused by the peril of Windstorm or Hail during the period described in Paragraph **B.1.a.(2)** of this endorsement.

**f.** Refer to the policy Declarations for the deductible that applies to loss caused by the peril of Windstorm or Hail other than during the period described in Paragraph **B.1.a(2)** of this endorsement.

All other provisions of this policy apply.

HO 03 53 08 11 (Page 1-2 of 2)

## <u>TWENTY-SIXTH DEFENSE</u>

Plaintiff's claims are further subject to the property coverages outlined in the policy as follows:

### SECTION I – PROPERTY COVERAGES

**A.** **Coverage A – Dwelling**

**1.** We cover:

**a.** The dwelling on the "residence premises" used mainly as your private residence shown on the Declarations, including attached structures, other than fences, and attached wall-to-wall carpeting if damage to the dwelling is caused by a covered loss.

    **b.**    Materials and supplies located on or next to the "residence premises" used to construct, alter or repair the dwelling or other structures on the "residence premises".

    **c.**    In-ground swimming pools, including related permanently installed equipment such as pumps and filters.

**2.**    We do not cover land, including land on which the dwelling is located.

**B.**    **Coverage B – Other Structures**

    **1.**    We cover:

        **a.**    Other structures on the "residence premises" set apart from the dwelling by a clear space;

        **b.**    Other structures connected to the dwelling, by only a fence, utility line or similar connection; and

        **c.**    Fences.

    **2.**    We do not cover:

        **a.**    Land, including land on which the other structures are located;

        **b.**    Other structures rented or held for rental to any person not a tenant of the dwelling, unless used solely as a private garage;

        **c.**    Other Structures used to store "business" property. However, we do cover a structure that contains "business" property solely owned by an "insured" or a tenant of the dwelling provided that "business" property does not include gaseous or liquid fuel, other than fuel in a permanently installed fuel tank of a vehicle or craft parked or stored in the structure.

    **3.**    The limit of liability for this coverage will not be more than the limit of liability on the Declarations for Coverage **B**. Ise of this coverage does not reduce the Coverage **A** limit of liability.

**Special Limits of Liability**

**Cosmetic and Aesthetic Damages to Floors**

The total limit of liability for Coverages **A** and **B** combined in $10,000 per policy term for cosmetic and aesthetic damages to floors, resulting from a covered cause of loss.

        **a.**    Cosmetic or aesthetic damage includes, but is not limited to, chips, scratches, dents or any other damage to less than 5% of the total floor surface area and does not prevent typical use of the floor.

        **b.**    This limit includes the cost of tearing out and replacing any part of the building necessary to repair the damaged flooring.

        **c.**    This limit does not increase the Coverage **A** or Coverage **B** limits of liability shown on the Declarations.

     **d.**     This limit does not apply to cosmetic or aesthetic damage to floors caused by a Peril Insured Against as named and described for Coverage **C** – Personal Property.

**C.**     **Coverage C – Personal Property**
     **1.**     **Covered Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. After a loss and at your request, we will cover personal property owned by:

     **a.**     Others while the property is on the part of the "residence premises" occupied by an "insured"; or

     **b.**     A guest or a "residence employee", while the property is in any residence occupied by an "insured".

     **2.**     **Limit For Property At Other Residences**

     Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage **C**, or $1,000, whichever is greater. However, this limitation does not apply to personal property:

     **a.**     Moved from the "residence premises" because it is being repaired, renovated or rebuilt and is not fit to live in or store property in; or

     **b.**     In a newly acquired principal residence for 30 days from the time you begin to move the property there.

     **3.**     **Special Limits Of Liability**

     The special limit for each category shown below is the total limit for each loss for all property in that category. These special limits do not increase the Coverage **C** limit of liability.

     **a.**     $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum other than platinumware, coins, medals, scrip, stored value cards and smart cards.

     **b.**     $1,500 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

This limit includes the cost to research, replace or restores the information from the lost or damaged material.

     **c.**     $1,500 on watercraft of all types, including their trailers, furnishings, equipment and outboard engines or motors.

     **d.**     $1,500 on trailers or semitrailers not used with watercraft of all types.

     **e.**     $1,500 for loss by theft of jewelry, watches, furs, precious and semiprecious stones.

**f.**   $2,500 for loss by theft of firearms and related equipment.

**g.**   $2,500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware, platinumware, platinum-plated ware and pewterware. This includes flatware, holloware, tea sets, trays and trophies made of or including silver, gold or pewter.

**h.**   $2,500 on property, on the "residence premises", used primarily for "business" purposes.

**i.**   $500 on property, away from the "residence premises", used primarily for "business" purposes. However, this limit does not apply to loss to electronic apparatus and other property described in Categories **j.** and **k.** below.

**j.**   $1,500 on electronic apparatus and accessories, while in or upon a "motor vehicle", but only if the apparatus is equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **j**.

**k.**   1,500 on electronic apparatus and accessories used primarily for "business" while away from the "residence premises" and not in or upon a "motor vehicle." The apparatus must be equipped to be operated by power from the "motor vehicle's" electrical system while still capable of being operated by other power sources.

Accessories include antennas, tapes, wires, records, discs or other media that can be used with any apparatus described in this Category **k**.

**l.**   $2,500 on personal computers and related peripherals such as disk drives, printers and commercial software. We will not pay for other software or lost data.

**m.**   5% of the total Coverage **C** amount for any one item of unscheduled personal property.

**n.**   $500 on all collections, including, but not limited to, baseball cards, comic books, album covers and any other memorabilia. This limit applies regardless of the number of collections or collectibles.

**o.**   $1,000 for loss to art glass windows and other works of art such as, but not limited to, statuary (including, but not limited to, Hummels), marbles, bronzes, porcelains, rare glass, and bric-a-brac.

**p.**   $1,000 for bicycles and related equipment.

**q.**   $2,000 for any individual item or set of electronic equipment caused directly or indirectly by theft or vandalism with a maximum total limit of 10% of the Coverage **C** limit for all

electronic equipment. Electronic equipment includes, but is not limited to:

**(1)**   Televisions, audio, video and other electronic media playing and/or recording devices.

**(2)**   Audio and video media storage devices such as dvds, records, cds, and tapes.

**(3)**   Cameras, projectors and related equipment.

**(4)**   Gaming systems including their games and accessories.

**r.**   $5,000 for loss to tools.

**s.**   $500 is the maximum loss payable for covered property stored in freezers or refrigerators on the "residence premises".

**4.   Property Not Covered**

We do not cover:

**a.**   Articles separately described and specifically insured, regardless of the limit for which they are insured, in this or other insurance;

**b.**   Animals, birds or fish;

**c.**   "Motor vehicles".

**(1)**   This includes:

**(a)**   Their accessories, equipment and parts; or

**(b)**   Electronic apparatus and accessories designed to be operated solely by power from the electrical system of the "motor" vehicle". Accessories includes antennas, tapes, wires, records, discs or other media that can be used with any apparatus described above.

This exclusion of property described in **(a)** and **(b)** above applies only while such property is in or upon the "motor vehicle".

**(2)**   We do not cover "motor vehicles" not required to be registered for use on public roads or property which are:

**(a)**   Used solely to service an "insured's" residence; or

**(b)**   Designed to assist the handicapped;

**d.**   Aircraft, meaning any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo, and "drone" and parts belonging to aircraft or "drone".

We do not cover model or hobby aircraft, except "drone", not used or designed to carry people or cargo;

**e.**   Your satellite dish, satellite antenna or radio towers and their antenna. This exclusion also applies to all related receiving equipment including receiver mounts, transducers or other

receiver parts or installation parts. Television sets are not excluded under this exclusion.

**f.**   Hovercraft and parts. Hovercraft means a self-propelled motorized ground effect vehicle and includes, but is not limited to, flarecraft and air cushion vehicles.

**g.**   Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured"'

**h.**   Property in an apartment regularly rented or held for rental to others by an "insured", except as provided in **E.10**. Landlord's Furnishings under Section **I** – Property Coverages.

**i.**   Property rented or held for rental to others off the "residence premises";

**j.**   "Business" data, including such data stored in:

   **(1)**   Books of account, drawings or other paper records; or

   **(2)**   Computers and related equipment.

   We do not cover the cost of blank recording or storage media, and of prerecorded computer programs available on the retail market;

**k.**   Credit cards, electronic fund transfer cards or access devices used solely for deposit, withdrawal or transfer of funds except as provided in **E.6.** Credit Card, Electronic Fund Transfer Card Or Access Device, Forgery And Counterfeit Money under Section **I** – Property Coverages; or

**l.**   Water or steam.

HO 00 03 10 00 (Pages 3-5 of 22) as amended by CCH HO3 LA SP 03 19 (Pages 2-3 of 11).

## **TWENTY-SEVENTH DEFENSE**

Based on the policy terms, conditions, provisions, and exclusions, but not limited to those specifically set forth above, Palomar submits that the Policy of Insurance issued to Plaintiff does not provide coverage for the claims asserted in this lawsuit.

## **TWENTY-EIGHTH DEFENSE**

Separately and independently, Palomar is entitled to a declaration that Plaintiff's alleged damages were not caused by a PERIL INSURED AGAINST under the Palomar Policy.

## TWENTY-NINTH DEFENSE

Separately and independently, Palomar is entitled to a declaration that coverage for Plaintiff's claims is precluded by one or more exclusions in the Palomar Policy.

## THIRTIETH DEFENSE

Although Palomar denies it in any manner breached its contractual or statutory duties to Plaintiff, should Plaintiff establish a breach of contract and/or violation of statutory duties, Plaintiff has not suffered any real damages as a result of said breach and/or violation of statutory duties and/or any other action or inaction by Palomar.

## THIRTY-FIRST DEFENSE

In the alternative, Plaintiff has not been damaged as result of any alleged actions or inactions on the part of Palomar. If Plaintiff suffered any damages as alleged, such damage was caused in whole or in part by the action or inaction of Plaintiff and/or third parties for whom Palomar is not responsible and/or forces beyond Palomar's control, thereby reducing any recovery herein proportionate to the comparative fault of Plaintiff and/or those third parties.

## THIRTY-SECOND DEFENSE

In the further alternative, Plaintiff's claims are barred or reduced to the extent Plaintiff has failed to mitigate his alleged damages.

## RESERVATION OF AFFIRMATIVE DEFENSES

Palomar is without knowledge or information sufficient to form a belief as to whether other affirmative defenses apply in this matter. However, contingent on the facts revealed by investigation and discovery, Palomar expressly reserves its right to raise any additional affirmative defenses, which may be applicable.

**AND NOW**, without waiving any of the foregoing defenses, Palomar answers the allegations of the Complaint categorically and by paragraph, as follows:

1.

The allegations of Paragraph 1 of the Complaint are denied as written except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*.

**2.**

The allegations of Paragraph 2 of the Complaint  are denied except to admit the name of Palomar Specialty Insurance Company.

**3.**

The allegations of Paragraph 3 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied as written.

**4.**

The allegations of Paragraph 4 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied as written.

**5.**

The allegations of Paragraph 5 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied as written.

**6.**

The allegations of Paragraph 6 of the Complaint are denied except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its

terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*.

**7**.

The allegations of Paragraph 7 of the Complaint are denied except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*.

**8.**

The allegations of Paragraph 8 of the Complaint are denied except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*.

**9.**

The allegations of Paragraph 9 of the Complaint are denied as written.

**10.**

The allegations of Paragraph 10 of the Complaint are denied except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*.

**11**.

The allegations of Paragraph 11 of the Complaint are denied for lack of sufficient knowledge or information to justify a belief therein.

**12.**

The allegations of Paragraph 12 of the Complaint are denied as written.

**13.**

The allegations of Paragraph 13 of the Complaint are denied.

**14.**

The allegations of Paragraph 14 of the Complaint are denied.

**15.**

The allegations of Paragraph 15 of the Complaint are denied.

16.

The allegations of Paragraph 16 of the Complaint are denied.

**17.**

The allegations of Paragraph 17 of the Complaint are denied.

**18.**

Defendant re-asserts and re-avers their responses to Paragraphs 1 - 17 of the Complaint for Damages provided above, as if same were re-stated and re-alleged herein.   The remaining allegations of Paragraph 18 are denied.

**19.**

The allegations of Paragraph 19 of the Complaint for Damages are denied except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso.*

**20.**

The allegations of Paragraph 20 of the Complaint for Damages are denied except to admit that Palomar issued a Policy of Insurance but that such policy as a written document is the best evidence of its terms, conditions, provisions and exclusions and Palomar pleads such terms, conditions, provisions and exclusions as if copied herein *in extenso*

**21.**

The allegations of Paragraph 21 of the Complaint are denied.

**22.**

The allegations of Paragraph 22 of the Complaint are denied, including but not limited to sub-paragraph a) through g).

**23.**

The allegations of Paragraph 23 of the Complaint are denied.

**24**.

The allegations of Paragraph 24 of the Complaint are denied.

**25.**

Defendant re-asserts and re-avers their responses to Paragraphs 1 - 24 of the Complaint for Damages provided above, as if same were re-stated and re-alleged herein.   The remaining allegations of Paragraph 25 are denied.

**26.**

The allegations of Paragraph 26 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied as written.

**27.**

The allegations of Paragraph 27 of the Complaint are denied.

**28.**

The allegations of Paragraph 28 of the Complaint are denied, including but not limited to sub-paragraph a) and b).

**29.**

The allegations of Paragraph 29 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied.

**30.**

The allegations of Paragraph 30 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied as written.

**31.**

The allegations of Paragraph 31 of the Complaint are denied, including but not limited to sub-paragraph a). through d).

**32.**

The allegations of Paragraph 32 of the Complaint are denied.

**33.**

The allegations of Paragraph 33 of the Complaint contain legal conclusions for which no answer is required. To the extent an answer is required, the allegations are denied.

**34.**

The allegations of Paragraph 34 of the Complaint are denied.

**35.**

The allegations of Paragraph 35 of the Complaint do not require an answer from this Defendant. To the extent an answer is required, the allegations are denied.

**36.**

The allegations contained in any un-numbered or mis-numbered Paragraphs and in the Prayer for Relief of the Complaint not heretofore addressed are denied.

## REQUEST FOR JURY TRIAL

Pursuant to the Seventh Amendment of the United States Constitution and Federal Rules of Civil Procedure, Allied Trust Insurance Company requests a jury for all issues triable at the trial of this matter.

## PRAYER FOR RELIEF

**WHEREFORE**, the premises considered, defendant, Palomar Specialty Insurance Company, prays that this Answer to the Complaint for Damages be deemed good and sufficient and after due proceedings are had, that there be judgment herein in favor of Palomar Specialty Insurance Company and against Plaintiff, dismissing Plaintiff's Complaint for Damages, with prejudice, at Plaintiffs' costs and for all other general and equitable relief as it appropriate under the circumstances.

**FURTHER**, Palomar Specialty Insurance Company prays for a trial by jury on all matters involving this litigation.

Respectfully submitted,

*/s/ Rowan W. Stoehr*
**MATTHEW D. MONSON (25186)**
**JOHN C. HENRY (18948)**
**RACHEL L. FLARITY (33131)**
**JOHN D. MINEO, IV (36587)**
**ERIN BERGGREN (37551)**
**LAUREN A. LAM (37758)**
**KYLE C. MATTHIAS (38338)**
**ROWAN W. STOEHR (39061)**
**AUSTIN  T. WELCH (40100)**
**THE MONSON LAW FIRM, LLC**
5 Sanctuary Boulevard, Suite 101
Mandeville, Louisiana 70471
Telephone:     (985) 778-0678
Facsimile:      (985) 778-0682
Rowan@Monsonfirm.com
*Counsel for Palomar Specialty*
*Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 20th 2023, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to CM/ECF participating parties. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the non-CM/ECF participating parties.

*/s/ Rowan W. Stoehr*